IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| JANET ABRAHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:11cv182-DWD |
| ) | |
| CBOCS, INC. ) | |
| **et al.**, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

This matter is before the Court by consent of the parties pursuant to 28 U.S.C. § 636(c)(1) on the Defendant's Motion for Summary Judgment (ECF No. 17). The matter has been thoroughly addressed by the parties' submissions and the Court has entertained oral argument on the matter. For the reasons set forth herein, the Court shall GRANT the Defendant's Motion for Summary Judgment (ECF No. 17).

### I. BACKGROUND

The parties have submitted their respective statements of undisputed material facts pursuant to the Court's Local Rules, and the Court has reviewed the statements, including the references to supporting evidence. Based upon the parties' submissions, the Court concludes that the following narrative succinctly represents the facts for purposes of resolving the motion.

On March 3, 2009, Janet Abraham ("Abraham" or the "Plaintiff") was an employee of CBOCS, Inc. ("Cracker Barrel" or the "Defendant") (Def.'s Mem. Sup. Mot. Sum. J. ("Def.'s Mem.") at 1, ECF No. 18; Pl.'s Br. Opp'n Mot. Sum. J. ("Pl.'s Opp'n") at 1, ECF No. 19.) That

day, Abraham worked from approximately 2:55 p.m. to 10:08 p.m. at the Cracker Barrel restaurant located in Mechanicsville, Virginia (Def.'s Mem. at 1.) After she "clocked out" at the above time, she "stop[ped] for a few minutes to talk to [three] of [her] co-workers in casual conversation on the porch" (Pl.'s Opp'n at 1.) Abraham then exited the restaurant through the front door and began walking through the Cracker Barrel parking lot, where she slipped on ice, fell, and was injured (Def.'s Mem. at 1; Pl.'s Opp'n at 2.) The parking lot in which she fell was owned and operated by Cracker Barrel (Compl. at 2, ECF No. 1-1.)[1]

Subsequent to Abraham's injury, Cracker Barrel filed a "First Report of Injury" with the Virginia Worker's Compensation Commission (the "Commission"), disputing the compensability of her injury (Def.'s Mem. at 3.) As a result, the Commission then sent Abraham a "Notification of Denial" on May 18, 2009, informing her that the insurance carrier denied the claim, while also giving her notification of her rights before the Commission. (Def.'s Mem. at 3.) The reason cited by the insurance carrier for the denial was lack of causal relationship. Specifically, the carrier asserted that Abraham "was not on the clock when she was injured" and that she "[f]ell outside of the building and there were no witnesses" (Notification of Denial at 1, ECF No. 18-6.)

Abraham did not dispute the denial or file a Worker's Compensation Claim with the Commission. (Def's Reply to Pl's Opp'n ("Def.'s Reply") at 3, ECF No. 20.) Instead, on February 18, 2011, she filed a civil complaint in the Circuit Court for the City of Richmond asserting claims against Cracker Barrel and seeking damages totaling $750,000 for her injuries sustained as a result of these events. Cracker Barrel removed the case to this Court, and the Court exercises jurisdiction pursuant to 28 U.S.C. § 1332(a), because the parties are completely

---

[1] At oral argument, the parties confirmed that there is no disputing Cracker Barrel's ownership of the parking lot in question.

diverse and the amount in controversy exceeds $75,000. Following extensive discovery, Cracker Barrel now moves for summary judgment, arguing, *inter alia*, that this court lacks subject matter jurisdiction pursuant to Virginia's Workers' Compensation Bar, Va. Code § 65.2-307(A). (Def.'s Mem. at 7.)

Because it determines "the court's very power to hear the case," the Court must address subject matter jurisdiction before addressing the merits of the case. Owens-Illinois, Inc. v. Meade, 186 F.3d 435, 442 n.4 (4th Cir. 1999). Finding this issue dispositive of the case, the Court will not address the additional arguments raised by the motion.

## II. STANDARD OF REVIEW

A motion made pursuant to Fed. R. Civ. P. 12(b)(1) challenges the court's jurisdiction over the subject matter of the complaint, and may be raised at any time.[2] If a defendant contends that the complaint fails to allege facts upon which subject matter jurisdiction can be based, all facts in the complaint are presumed true. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982); see also King v. Riverside Reg'l Med. Ctr., 211 F. Supp. 2d 779, 780-81 (E.D. Va. 2002). Alternatively, if the defendant argues that the jurisdictional facts in the complaint are untrue, "the Court may 'look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" Virginia v. United States, 926 F. Supp. 537, 540 (E.D. Va. 1995) (quoting Capitol Leasing Co. v. FDIC, 999 F.2d 188, 191 (7th Cir. 1993)); see also Adams, 697 F.2d at 1219.

---

[2] Although the issue of subject matter jurisdiction has been submitted to the Court as part of a motion for summary judgment made pursuant to Fed. R. Civ. P. 56, the procedural standards of Rule 12(b)(1) govern since the dispositive issue is subject matter jurisdiction. Nevertheless, the Court has construed the facts pursuant to Rule 56, as the parties have done, because the jurisdictional facts are beyond dispute.

### III. DISCUSSION

Cracker Barrel challenges the Court's jurisdiction over the subject matter of this action by arguing that, pursuant to Va. Code § 65.2-307(A), the Virginia Worker's Compensation Act (the "Act") constitutes the exclusive remedy for Abraham's alleged injuries. (Def.'s Mem. at 3-7.)[3] Cracker Barrel postulates that Virginia law permits recovery under the Act for employees injured while in transit to or from work *and while on the employer's premises*. (Def.'s Mem. at 3-7 (emphasis added).) Pursuant to this argument, Cracker Barrel argues that "premises" includes parking lots owned or maintained by the employer. (Def.'s Mem. at 3-7.) For the reasons that follow, the Court agrees with the latter argument, finding the Court lacks subject matter jurisdiction to decide this matter.

**A.     Applicability of the Workers' Compensation Bar**

Precedent is clear that, where recovery for an injury is within the purview of the Virginia Worker's Compensation Act's scope, the rights afforded by the Act are "the sole remedies for the injury, to the exclusion of any other rights and remedies 'at common law or otherwise, on account of such injury, loss of service or death.'" Hilton v. Martin, 654 S.E.2d 572 (Va. 2008) (quoting Va. Code Ann. § 65.2-101). An injury falls within the scope of the Act when it "results from an 'accident' and arises out of and in the course of the injured person's employment." Id. Virginia courts have emphasized that the Act "should be liberally construed to carry out the humane and beneficent purpose of the [Act]." Brown v. Reed, 165 SE.2d 394, 396 (1969). Pursuant to this mandate, an "injury" "aris[es] out of the employment 'when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury.'" Id. at 564

---

[3] Ordinarily, a federal court sitting in diversity must apply the substantive law of the state in which it sits -- Virginia in this case. Erie Ry. Co. v. Tompkins, 304 U.S. 64, 78 (1938).

(quoting In re McNicol, 102 N.E. 697 (1913). More specifically, an injury "arises . . . in the course of . . . employment" when it "takes place within the period of employment, at a place where the employee may be reasonably expected to be, and while he is reasonably fulfilling the duties of his employment or is doing something which is reasonably incident thereto." Id. Stated differently, "[t]he phrase arising 'in the course of' refers to the time, place, and circumstances under which the accident occurred. The phrase arising 'out of' refers to the origin or cause of the injury." County of Chesterfield v. Johnson, 376 S.E.2d 73, 74 (1989).

Plaintiff argues that the facts of the instant case preclude application of the Worker's Compensation exclusivity principle because exceptions to the aforementioned test preclude its application. She cites Boyd's Roofing Co., Inc. v. Lewis to support the proposition that "an employee going to or from the place where his work is to be performed is not engaged in performing any service growing out of and incidental to his employment." 335 S.E.2d 281, 282 (1985). Plaintiff properly lists three exceptions to this "going to and from work" rule: "1) where in going to and from work the means of transportation is provided by the employer or the time consumed is paid for or included in the wages; 2) where the way used is the sole and exclusive way of ingress and egress with no other way, or where the way of ingress and egress is constructed by the employer; and 3) where the employee on his way to or from work is still charged with some duty or task in connection with his employment" (Pl.'s Opp'n at 4.) She claims the facts of the present dispute render these exceptions inapplicable. (Pl.'s Opp'n at 4-5.)

Though Plaintiff cites Boyd's Roofing Co. and Kent v. Virginia-Carolina Chem. Co., 129 S.E. 330 (Va. 1925), in arguing that Plaintiff fails to satisfy any exception to the "going to and from work" rule, those cases do not encompass the full spectrum of available exceptions. In Barnes v. Stokes, the Supreme Court of Virginia held that an injury arose out of and in the course

5

of the employment when the plaintiff, who was in the process of departing from work, was struck by a car driven by a fellow employee. 355 S.E.2d 330, 331-32 (Va. 1987). The accident in that case occurred in a parking lot adjacent to the parties' place of employment and owned by their employer. Id. The court there, relying on Brown, another Virginia Supreme Court case, held that "if an employee sustains an injury while passing, with the express or implied consent of the employer, *to or from his or her work by a way over the employer's premises*, '*or* over those of another in such proximity and relation as to be in practical effect a part of the employer's premises,' the injury is causally related to the employment as if it had been sustained while the employee was engaged in work at the place of its performance." 355 S.E.2d at 331 (emphasis added). Consequently, the Act was the plaintiff's exclusive remedy.

Abraham relies on Barnes to support her contention that a parking lot owned by an employer can nonetheless fail to qualify as part of the employer's premises if the employer does not require employees to park within the area where the alleged injury is sustained. (Pl.'s Opp'n at 5.) The distinction is inaccurate. In deciding Barnes, the Supreme Court of Virginia was confronted with an injury on premises not owned by the employer, but rather leased for the purpose of providing employee parking. Barnes, 335 S.E.2d at 331. To that end, the employer instructed employees to park their vehicles in the lot where that Abraham's injuries occurred. Id. As mentioned previously, the Court in Barnes relied heavily on Brown to support the finding that, "if an employee sustains an injury while passing, with the express or implied consent of the employer, *to or from his or her work by a way over the employer's premises*, '*or* over those of another in such proximity and relation as to be in practical effect a part of the employer's premises,' the injury is causally related to the employment as if it had been sustained while the

6

employee was engaged in work at the place of its performance." 165 S.E.2d at 396 (1969) (emphasis added).

It is significant that the analysis cited by Abraham in the present dispute pertains to the latter half of the above test, namely whether the injury was sustained by an employee while passing over property belonging to another that is nonetheless "in practical effect a part of the employer's premises." Id. The Barnes decision reveals that an employer requiring employees to park in a designated lot is sufficient to establish that a property belonging to *another* is "in practical effect the employer's premises," but irrelevant if the property in question is owned by the employer, as such property is, *per se*, the employer's premises. Id (emphasis added). Consequently, the distinction drawn here by Abraham is without substance, as it is sufficient if the parking lot in question is the employer's property. Where an employee is injured while passing to or from work by a way over a parking lot *owned by the employer*, it is treated just as if it had been sustained while the employee was working.

Furthermore, that Abraham did not exit the Cracker Barrel premises immediately upon the termination of her shift, but instead took time to converse with co-workers, is similarly immaterial. "[T]here is no concept of 'instantaneous exit' from a place of employment immediately upon termination of work . . . [E]mployment includes not only the actual performance of the work, but also 'a reasonable margin of time and space necessary to be used in passing to and from the place where the work is to be done.'" Barnes, 355 S.E.2d at 331 (quoting Bountiful Brick Co. v. Giles, 276 U.S. 154 (1928)). A brief conversation between co-workers directly following a shift, but prior to departure, is not unreasonable or unexpected. Rather, such a brief conversation constitutes the above-cited reasonable margin of time and space necessary to be used in leaving a workplace.

At oral argument, Plaintiff emphasized that she parked in a segment of the Cracker Barrel parking lot designated for customers, purportedly interrupting the causal relationship between injury and employment. In doing so, she emphasized certain language in Brown suggesting that, when an employer furnishes employee-designated parking facilities on the premises, travelling to or from such a designated parking area is a necessary incident to the claimant's employment. Brown, 165 S.E.2d at 398-99. Accordingly, Plaintiff asserts that because she was parked in customer parking, not the designated employee parking, that fact distinguishes this case from Brown and Barnes. Plaintiff seems to be arguing that the furnished parking spaces must be specifically designated in order to implicate the Workers' Compensation Act, and that employees must necessarily park in those designated spaces in order to avoid interrupting the causal relationship between injury and employment. Neither Brown nor Barnes so hold. To the contrary, the dispositive issue is whether the employer furnished "parking facilities on the employer's premises," and whether the employee was transgressing to or from work. Id. Here, Cracker Barrel furnished parking facilities on their premises and permitted employees to make use of them. Plaintiff utilized these facilities and suffered an injury while on those premises, satisfying all relevant prerequisites to render Workers' Compensation the sole available remedy in cases of this type. Thus, it is irrelevant whether the particular parking space in which Abraham parked was ordinarily used by employees or customers.

The record is clear that the Virginia Worker's Compensation Act provides the sole remedy for Plaintiff's injuries. As set forth above, Plaintiff was injured because of an accident "while passing, with the . . . implied consent of the employer, from her work by a way over the employer's premises." Barnes, 355 S.E.2d at 331. Consequently, her injuries are causally related to her employment with Cracker Barrel as if they had been sustained while she was engaged in

work at the restaurant. Accordingly, the Defendants' motion for summary judgment shall be granted and the case dismissed for lack of subject matter jurisdiction.

**B.     Judicial Estoppel**

Relying principally on <u>Richfood, Inc. v. Ragsdale</u>, 429 S.E.2d 836 (Va. App. 1997), Abraham argues that Virginia's doctrine of judicial estoppel precludes Cracker Barrel from asserting the Workers' Compensation Bar. According to the doctrine, "in successive actions between two parties, 'a party will not be permitted to maintain inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him.'" <u>Id</u> at 837 (citations omitted). According to Abraham, Cracker Barrel's position before the Commission that benefits ought to be denied because Abraham "was not on the clock" and "there were no witnesses" to the accident should now preclude any argument that Workers' Compensation is her sole remedy. (Notification of Denial at 1.)

As a preliminary matter, the Court notes that the doctrine of judicial estoppel is procedural, not substantive. See <u>Homeland Training Ctr., LLC v. Summit Point Auto. Research Ctr.</u>, 594 F.3d 285, 294 n.1 (4th Cir. 2010) (citing <u>Allen v. Zurich Ins.</u>, 667 F.2d 1162, 1167 n.4 (4th Cir. 1982)). Thus, a federal court sitting in diversity must apply the federal law governing the doctrine. <u>Id</u> (citing <u>Erie</u>, 304 U.S. 64). Although generally comparable in concept, the Fourth Circuit has articulated a slightly different rule of judicial estoppel than has been employed by the Supreme Court of Virginia. <u>Compare</u> <u>Folio v. City of Clarksburg</u>, 134 F.3d 1211, 1217 (4th Cir. 1998) <u>with</u> <u>Richfood</u>, 492 S.E.2d at 837 n.2.

Pursuant to federal precedent, judicial estoppel is an equitable doctrine invoked at a court's discretion. <u>New Hampshire v. Maine</u>, 532 U.S. 742, 750 (2001). It is a doctrine intended to protect the integrity of the courts by preventing litigants from playing "fast and loose" with the

9

judicial system. Id at 749-50.  The party invoking the doctrine must establish four elements: "(1) the party to be estopped [is] advancing an assertion that is inconsistent with a position taken during previous litigation; (2) the position is one of *fact instead of law*; (3) the prior position [was] *accepted by the court in the first proceeding*; and (4) the party to be estopped [has] acted intentionally, not inadvertently."  Folio, 134 F.3d at 1217.

Here, the Court will not exercise its discretion to invoke the doctrine of judicial estoppel because elements two and three are absent.  The particular position taken before the Commission -- that there exists "No Causal Relationship" -- constitutes a conclusory position of *law*, not *fact*.  (Notification of Denial at 1.)  And those specific facts referenced therein (i.e. Abraham was not "on the clock" and there were no witnesses present) remain uncontroverted in this case.  (Def.'s Reply at 5.)  Had Cracker Barrel taken the position before the Commission that it did not own the parking lot, then it would be estopped from asserting otherwise now.  However, that is not the case here, as all positions of *fact* raised before the Commission remain consistent with those taken in this litigation.

As concerns the third element, it appears from the undisputed record that the Commission never adjudicated the matter.  Instead, Abraham was informed that the claim administrator denied the claim, and she was advised of her right to dispute the denial.  She never challenged the denial or otherwise sought any ruling from the Commission.  No adjudication was ever made, one way or the other, so it cannot be said that any position asserted by Cracker Barrel was "accepted by" the Commission.  Folio, 134 F.3d at 1217.  Thus, the third element of the analysis is also lacking.

For these reasons, Cracker Barrel's position in this case does not implicate the doctrine of judicial estoppel. Thus, the Court's analysis of the Workers' Compensation Bar, *supra* at Section III(A), controls, and the case must be dismissed for lack of subject matter jurisdiction.

## IV. CONCLUSION

For the reasons discussed herein, the Defendants' Motion for Summary Judgment (ECF No. 17) shall be GRANTED, and the case dismissed for lack of subject matter jurisdiction.

An appropriate Order shall issue.

/s/
Dennis W. Dohnal
United States Magistrate Judge

Richmond, Virginia
Dated: October 27, 2011